NYGAARD, J.,
concurring and dissenting.
I take little issue with most of the majority’s carefully crafted opinion. I do, however, respectfully part ways with its choice of Puerto Rican law, and conclusion that the Estate of Natalie K. Calhoun should be denied punitive damages.
As the majority correctly points out, a federal ■ court sitting in diversity applies the forum state’s choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 *352 U.S. 487, 61, S.Ct. 1020, 85 L.Ed. 1477 (1941). This requires that we weigh the interests of the jurisdictions involved and consider how these interests are related to the specific issues involved in the conflict. See Lauritzen v. Larsen, 345 U.S. 571, 582, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).
Contacts considered vital in determining the state of most significant relationship include: place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered. See Restatement (Second) of Conflict of Laws § 145(2) (1971). The importance of the respective contacts is determined, in part, by considering the issues, the nature of the tort, and the purposes of the tort rules involved. Id. at § 145 (comments e-f).
The District Court relied exclusively on the fact that Puerto Rico does not provide punitive damages as part of its damages scheme:
[The] purposes [of punitive damages] appear to be the community purposes of the state or community in which the tortious activity takes place. The fact that Puerto Rico does not have a regime of punitive damages reflects a community determination that Puerto Rico for its reasons does not think that punitive damages are the instrument ... through which it wishes to pursue ... punishment on the one hand and deterrence on the other.
Calhoun v. Yamaha Motor Corp., 40 F.Supp.2d 288, 291 (E.D.Pa.1999).
The District Court further opined that since the chief purposes of punitive damages are to deter and punish, rather than compensate, the victims, the public policy of Puerto Rico, a Commonwealth that has elected not to employ punitive damages as an. instrument of deterrence and punishment, should, govern as to this aspect of damages, instead of the public policy of Pennsylvania. See id.; see also Calhoun v. Yamaha Motor Co., 1998 WL 717430 (E.D.Pa.1998). However, under the modern interest-analysis conflict of laws approach that is followed by the majority of states including Pennsylvania, the law of the state with,the greatest interest in furthering the public policy behind its punitive damages scheme-should govern.
Puerto Rico has little interest in the outcome here. In contrast, Pennsylvania’s interest in the amount of recovery in wrongful death cases is great. ' The Constitution of Pennsylvania, Article III, Section 21 P.S. (cited in Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796, 807 (1964)) states:
The General Assembly may enact laws requiring the payment by employers, or employers and employees jointly, of reasonable compensation for injuries to employees arising in the course of their employment * * *; but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive * * * (emphasis added).
Punitive damages are appropriate in Pennsylvania when the act committed, in .addition to causing actual damages, constitutes “outrageous conduct,” either through reckless indifference or bad motive. See McClellan v. Health Maintenance Org. of Pennsylvania, 413 Pa.Super. 128, 604 A.2d 1053, 1061 (1992); see also Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747-48 (1984). We have held that three factors should be considered when awarding punitive damages: (1) the character of the act; (2) the nature and extent of the harm caused; and (3) the wealth of the defendant. See Donaldson v. Bernstein, 104 F.3d 547, 557 (3d Cir.1997) (citing Kirkbride v. Lisbon Contractors, Inc., 521 Pa. 97, 555 A.2d 800, 803 (1989)). See also Restatement (Second) of Torts § 908(2) (regarding imposition of punitive damages adopted in Pennsylvania).
Here, the defendant, a Japanese corporation, (tortious actor) defectively manu- *353 factored a jet ski in Japan (character of act), the tortious act resulted in the death of a Pennsylvania resident while riding the defective jet ski (extent of harm caused), and the defendant is a very large multi-national corporation (wealth of the defendant). These factors indicate Pennsylvania’s interest in awarding punitive damages to the Calhouns. They also evince Puerto Rico’s little interest in the outcome of the lawsuit. The fatal accident did not occur to a Puerto Rican citizen, the plaintiff is not Puerto Rican, the outrageous conduct was not committed by a Puerto Rican, and the only connection Puerto Rico has is that the accident happened to have occurred there. The District Court’s reliance on. the “community purposes of the state in which the tortious activity took place” is misplaced, because the “tortious activity” at issue in this case — the allegedly defective design and manufacture of the jet ski — did not occur in Puerto Rico. Rather, the jet ski was designed and manufactured by a Japanese corporation in Japan.
The Supreme Court has held that punitive damages may properly be imposed to further a state’s legitimate interests in punishing unlawful conduct and deterring its repetition. See BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). By my analysis, Pennsylvania has a more legitimate interest in getting the punitive damages awarded for the wrongful death of one of its residents than Puerto Rico has in protecting one of its citizens from an excessive verdict by precluding the award of punitive damages.
The Pennsylvania Supreme Court has held that compensation of an injured plaintiff is primarily a concern of the state in which the plaintiff is domiciled. Griffith, 203 A.2d at 806. The only interest of the state of injury would be in the compensation of those who rendered medical aid and other assistance to the injured parties. Id. Where, as here, immediate death occurs, the state has no such interest. Id. at 807. Thus, under Pennsylvania law, Puerto Rico has no interest in the compensation of this decedent’s, estate. Pennsylvania, on the other hand, has a very strong interest in seeing that one of its residents is compensated under a wrongful death claim, and that an outrageous and tortious, act be punished to deter the defendant from continuing its behavior.
In my view, this result id consistent with Scott v. Eastern Air Lines, Inc., 399 F.2d 14 (3d Cir.1968), cert. denied, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968). In Scott, the following.contacts were crucial to our decision: the decedent was domiciled in Pennsylvania; the letters of administration were granted by the Register of Wills of Philadelphia County; the decedent’s personal property was located in Pennsylvania; the decedent’s relationship with the defendant began in Pennsylvania, and the defendant did business in Pennsylvania. See 399 F.2d at 22.
The facts in Scott are very similar to the facts here: (1) the decedent in Scott was in Boston voluntarily and Natalie was in Puerto Rico voluntarily; (2) the decedent in Scott got on a plane in Boston voluntarily and Natalie got on the jet-ski in Puerto Rico voluntarily; (3) the decedent in Scott was killed in Boston and Natalie was killed in Puerto Rico; (4) the decedent in Scott was a Pennsylvania resident as was Natalie; and (5) the decedent’s estate in Scott was settled in Pennsylvania, Natalie’s estate is to be settled in- Pennsylvania, and Yamaha does business in Pennsylvania, including advertising and distributing its products. In contrast, Puerto Rico’s sole contact with the incident in question is that Natalie’s death occurred in its territorial waters. Thus, under the ratio decidendi of Scott, Puerto Rico (like Massachusetts in Scott), the state where the accident occurred, has no interest in the outcome of the litigation.
In LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069 (3d Cir.1996), a Pennsylvania resident was injured at his regular workplace in Delaware. In LeJeune the cornerstone of *354 our conclusion that Delaware was not a fortuitous, place of injury, was the fixed location of the plaintiffs workplace, the regularity of his presence there, and the fact that the majority of the wrongful conduct occurred in Delaware. Neither Scott nor LeJeune defines the concept of fortuity. However, as the Calhouns argue and I agree, Natalie’s brief vacation in Puerto Rico is more akin to that of the plaintiff in Scott than to the status of the plaintiff in LeJeune who came to Delaware every day to work.
Other Circuits provide some guidance. In airplane crash cases, for example, the place of injury is much more fortuitous than the place the defendant selects as his place of incorporation and principal place of business or the place of misconduct. In In re Air Crash Near Chicago, 644 F.2d 594, 615 (7th Cir.1981); cert. denied, 454 U.S. 878, 102 S.Ct. 858, 70 L.Ed.2d 187 (1981), the court held that the state where an injury occurs has less interest in deterrence and less ability to control behavior by deterrence or punishment than the state where the plaintiff is domiciled or the state where the misconduct occurred. In La Plante v. American Honda Motor Co., Inc., 27 F.3d 731 (1st Cir.1994), the court applied Rhode Island law to govern a products liability action brought by an army mechanic stationed in Colorado against Honda in his home state of Rhode Island for injuries sustained in Colorado while operating a vehicle designed and manufactured by Honda. In rejecting the law of the place of injury, the La Plante court gave significant weight to the fact that the tortious conduct that gave rise to the plaintiffs claim occurred not in Colorado, but in Japan, where the car was designed. Id. at 741.
In Villaman v. Schee, 1994 WL 6661 at *4 (9th Cir.1994), the court held that because Arizona tort law was designed in part to deter negligent conduct within its borders, Arizona had a stronger interest in the application of its laws allowing for full ■compensatory and punitive damages than Mexico did, whose limitation of tort damages, like Puerto Rico’s, was designed to protect its residents “from excessive financial burdens or exaggerated claims.” If the defendants in this case were Puerto Rican residents, then Puerto Rico’s interest in protecting its residents from excessive financial burdens might be somewhat compelling. However, Puerto Rico has no resident to protect and I conclude it has no interest in denying either punishment or full recovery to non-residents.
Although punitive damages may be the medium of deterrence, the result and purpose of punitive damages is to protect citizens. I would hold that the District Court erred by concluding that the Cal-houns’ punitive damages claim-is governed by Puerto Rico law. !