Robert A. CINALLI, et al., Plaintiffs,

v.

Robert C. KANE, et al., Defendants.

No. CIV.A. 01–CV–490.

United States District Court,
E.D. Pennsylvania.

March 12, 2002.

602

**604**

Mark B. Sheppard, Duane, Morris & Heckscher, LLP, Philadelphia, PA, for R. Kane and D. Kane.

John M Campbell, Yost & Tretta, Philadelphia, PA, for Pillar to Post and R. Galster.

Stephen M. Donweber, Saul Ewing, LLP, Philadelphia, PA, for Tim Kerr's Power Play Realty and C. Gallagher.

Timothy J. Bloh, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Avalon Real Estate Agency and W.K. Soens.

William T. Salazar, Swartz, Campbell & Detweiler, Philadelphia, PA, for Cornell Harbor Condominium Ass'n., L. Stave and J. Carnuccio.

Robyn F. McGrath, Sweeney & Sheehan, P.C., Philadelphia, PA, for McCorristin-Desmond and J. Desmond.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is a contract case brought by Plaintiffs Robert A. and Susan W. Cinalli ("Plaintiffs") against a multitude of Defendants, who allegedly had some connection with Plaintiffs' purchase of a condominium unit in Avalon, New Jersey. Those Defendants include Robert C. and Dorothy A. Kane ("Kanes"), the sellers of the condominium unit; Tim Kerr's Power Play Realty ("Power Play"), the realty agency retained by the Kanes; Chris Gallagher ("Gallagher"), the Power Play agent who handled the Kanes' account; Avalon Real Estate Agency ("AREA"), the realty agency retained by Plaintiffs; William Soens ("Soens"), the AREA agent who handled Plaintiffs' account; Pillar to Post ("Pillar"), the building inspection service hired by Plaintiffs to inspect the Kanes' condominium unit prior to Plaintiffs' purchase; Bob Galster ("Galster"), the Pillar employee who performed the inspection on the Kanes' property; Cornell Harbor Condominium Association ("Cornell Harbor"), the condominium association with which the Kanes' property was affiliated; Lois Stave ("Stave"), the President of Cornell Harbor; Joe Carnuccio ("Carnuccio"), the Vice President of Cornell Harbor; McCorristin–Desmond ("McCorristin–Desmond"), the property managing company responsible for maintenance of the common areas at Cornell Harbor; and Jack Desmond

("Desmond"), owner of McCorristin–Desmond (collectively "Defendants").

Plaintiffs' Amended Complaint alleges several claims against all or some of the above Defendants. Among the claims alleged are breach of contract/warranties; promissory estoppel; misrepresentation; negligence; unfair trade practices; and breach of fiduciary duty. Presently before the Court are five separate motions to dismiss pursuant to Fed.R.Civ.P. 12(b). Also before the Court is Plaintiffs' Motion to Transfer this case to the District Court for the District of New Jersey. For the reasons that follow, we will dismiss the claims against the Kanes, Cornell Harbor, Stave, Carnuccio, McCorristin–Desmond, and Desmond for lack of subject matter jurisdiction. Further, we will transfer Plaintiffs' claims against Power Play, Gallagher, AREA, Soens, Pillar, and Galster to the District of New Jersey.

## BACKGROUND

The facts of this case are relatively simple. In December 1999, Plaintiffs entered into an agreement of sale for a condominium unit located in Avalon, New Jersey. The unit was part of a larger condominium complex governed by Cornell Harbor. The individual unit at issue was owned by Robert and Dorothy Kane. The closing on the sale of the property occurred in January 2000.

Plaintiffs' purported causes of action all arise from various Defendants' alleged material omissions, misrepresentations, and non-disclosure about the condition of the property and surrounding areas. Specifically, Plaintiffs claim that there were undisclosed defects in the condominium's windows, needed repairs to the condominium complex's bulkhead and docks, and several property code violations. As a result of these conditions, Plaintiffs alleged they incurred certain costs which they seek to recover in this action, along with punitive and treble damages.

## DISCUSSION

### I. Legal Standard

In considering a motion to dismiss, a court must accept as true all facts alleged in a complaint and view them in the light most favorable to the plaintiff. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief can be granted. *See id.* Notwithstanding these standards, a court "need not credit a complaint's bald assertions or legal conclusions." *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir.1997) (internal quotations omitted).

### II. Subject-matter Jurisdiction

Federal courts have diversity jurisdiction over actions where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States...." 28 U.S.C. § 1332(a). This jurisdictional amount is generally determined by the good faith allegations made by a plaintiff in his or her complaint. *See In re LifeUSA Holding, Inc.*, 242 F.3d 136, 143 (3d Cir.2001). The plaintiff bears the continuing burden to show that jurisdiction is proper, and courts rigorously enforce this requirement. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1044–45 (3d Cir.1993). Here, there is no question that Plaintiffs and the various Defendants are diverse: Plaintiffs hail from Pennsylvania, the Kanes from North Carolina, and all other Defendants from New Jersey. At issue is whether Plaintiffs have satisfactorily established that the amount in controversy in this case exceeds $75,000.

All parties agree that Plaintiffs have alleged actual damages of $35,803.35. While that amount is well short of the $75,000 threshold required under § 1332(a), Plaintiffs have also made claims under Pennsylvania and New Jersey consumer protection acts, which can potentially provide treble damages. In addition, Plaintiffs ask for common law punitive damages. Plaintiffs argue that by virtue of these potential other damages, they have satisfied the amount in controversy requirement for subject-matter jurisdiction.

 The long-held standard for determining whether a plaintiff has satisfied the amount in controversy requirement was set out in *St. Paul Mercury Indemnity Co. v. Red Cab. Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288–89, 58 S.Ct. 586. The United States Court of Appeals for the Third Circuit has further stated that "dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir.1997) (quoting *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir.1995)). In cases where punitive or treble damages are recoverable, these types of damages are properly considered in determining whether the jurisdictional amount is satisfied. *See Suber*, 104 F.3d at 586–87 (noting that, when calculating amount in controversy, court should include treble damages); *Packard*, 994 F.2d at 1046 (same, punitive damages). In addition, in

cases where a plaintiff has alleged "independent, several liability against more than one defendant, plaintiff's claims against each defendant must *individually* satisfy the amount in controversy requirement." *C.D. Peacock v. Neiman Marcus Group, Inc.*, No. CIV.A. 97–5713, 1998 WL 111738, at n. 2 (E.D.Pa. Mar. 9, 1998). In view of these principles, we must determine whether it is a legal certainty that Plaintiffs' claims for actual, treble and/or punitive damages in combination fall short of satisfying the amount in controversy requirement for each Defendant.

### A. *Punitive Damages*

Defendants argue that punitive damages are not available to Plaintiff in this action. We agree.

 When considering punitive damages claims, Pennsylvania courts follow section 908(2) of the Restatement (Second) of Torts (1979), which states that:

> punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause, and the wealth of the defendant.

Here, Plaintiff has alleged nothing that could conceivably be considered an evil motive or even reckless indifference on the part of any Defendant. This entire case arises from a breach of contractual duties related to the sale of a property. It is well-established that punitive damages are not available for breach of contract claims. *See, e.g., Iron Mountain Sec. Storage Corp. v. American Speciality Foods, Inc.*, 457 F.Supp. 1158, 1165 n. 7 (E.D.Pa.1978); *Daniel Adams Assoc. v. Rimbach Publish-*

*ing, Inc.*, 287 Pa.Super. 74, 429 A.2d 726, 728 (1981). Plaintiff's only response to Defendants' argument is that it is too early in the proceedings to eliminate punitive damages and that, if he can prove fraud at trial, the trier of fact "would likely ... award punitive damages." (Pl.'s Resp. at 10). We find this response unavailing; even granting Plaintiffs every inference, their claim for punitive damages is without foundation. Moreover, when punitive damages make up the bulk of the amount necessary to confer subject matter jurisdiction, courts properly give these claims close scrutiny. *See Packard* 994 F.2d at 1046. And when punitive damages claims are not supported by facts alleged, courts have refused to include those claims in the amount in controversy. *See, e.g., Flail v. Travelers Cos.*, No. CIV.A. 98–1254, 1998 WL 709296, *3 (E.D.Pa. Oct. 6, 1998); *Lerch v. Maryland Ins. Group*, No. CIV.A. 94–5592, 1995 WL 30594, at *3 (E.D.Pa. Jan. 25, 1995); *Singer v. State Farm Mutual Auto. Ins. Co.*, 785 F.Supp. 510, 511 (E.D.Pa.1992). Because we find that under no set of facts could Plaintiffs recover punitive damages, we will grant Defendants' Motions with respect to that claim. Consequently, punitive damages are not available for purposes of satisfying the amount in controversy required for subject matter jurisdiction.

### B. *Treble Damages*

#### 1. *Choice of law*

■ Next, we must determine whether Plaintiffs' claims under state consumer protection laws suffice to meet the amount in controversy requirement. In doing so, the Court must first determine whether the Pennsylvania or New Jersey statute applies by undertaking the appropriate choice of law analysis. In a diversity action, "the choice of law rules of the forum state [determine] which state law will be applied." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Accordingly, we will apply the choice of law rules of Pennsylvania.

■ Pennsylvania's choice of law analysis has two parts. First, the court must ascertain whether a "false conflict" exists. *See LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996). A false conflict is one where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Id.* (internal quotation omitted). If, however, a true conflict exists, the court must then determine which state has the greater interest in the application of its law. *Id.* at 1071. This process involves a qualitative weighing of the contacts each state has with the dispute, and only those contacts that relate to the policies and interest underlying the issue before the court are relevant. *Id.* at 1072.

■ In this case, both New Jersey and Pennsylvania's consumer protection statutes are intended to protect purchasers from predatory sellers. However, the statutes differ somewhat in that treble damages are mandatory under the New Jersey statute but are discretionary under the Pennsylvania law. *Compare* N.J.S.A. 56:8–19 *with* 73 P.S. 201–9.2. The statutes also appear to differ in their scope; the Pennsylvania statute applies to private, non-commercial sales whereas the New Jersey statute only applies to professionals engaged or involved in sales to consumers. *Compare Six v. Cole*, 8 Pa. D. & C.4th 625 (1991) *with DiBernardo v. Mosley*, 206 N.J.Super. 371, 502 A.2d 1166, 1168 (1986). While the two statutes offer similar approaches to addressing the same problem, we cannot say that there is no conflict between them in this case. The issue immediately before the Court is whether the amount in controversy requirement is met. The differing scope and damages potential-

ly available under each statute bear directly on that question and could change the outcome. As such, we believe that a conflict exists and, therefore, turn to examining the contacts each state has with the present dispute.

It is uncontested that the property in question, the condominium association, the home inspectors, and both the buyers' and sellers' realtors are in New Jersey. All of the material actions in this case, including the inspection of the property, signing of the contract, and communications between the parties either occurred in or emanated from New Jersey. Plaintiffs point out that they were in Pennsylvania when they received some of the information about the property, and that Pennsylvania has an interest in protecting its citizens from fraud. While that may be true, we believe that interest is outweighed by the interest of New Jersey in ensuring business transactions occurring in New Jersey. Thus, we find that the New Jersey statute will apply to this case.

### 2. New Jersey Unfair Trade Practices Act

The New Jersey Unfair Trade Practices Act ("NJUTPA") provides that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission in connection with the sale or advertisement of any merchandise or real estate or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8–2. If a defendant is found to have committed an unconscionable commercial practice, the statute imposes mandatory treble damages. *Id.* 56:8–19.

New Jersey courts have held that this provision of the statute is to "be liberally construed in favor of consumers." *Gennari v. Weichert Realtors*, 288 N.J.Super. 504, 672 A.2d 1190, 1205 (1996). The New Jersey courts have also held that this provision of the statute does not apply to "the isolated sale of a single family residence by its owner." *DiBernardo v. Mosley*, 206 N.J.Super. 371, 502 A.2d 1166, 1168 (1986). However, the Act has been held to apply to professional real estate brokers, agents, and salespersons who represent non-professional sellers. *See Byrne v. Weichert Realtors*, 290 N.J.Super. 126, 675 A.2d 235, 240 (1996); *see also Neveroski v. Blair*, 141 N.J.Super. 365, 358 A.2d 473, 481–82 (1976) (statute's provisions applied to exterminator who gave a report upon which the buyer's of real property relied in making their decision to purchase a home), *abrogated on other grounds, Arroyo v. Arnold–Baker & Associates, Inc.*, 206 N.J.Super. 294, 502 A.2d 106 (1985).

To satisfy the $75,000 jurisdictional amount necessary for diversity jurisdiction in this case, Plaintiffs must properly allege that each of the Defendants violated the NJUTPA, which provides for treble damages. *See* 28 U.S.C. § 1332(a) (diversity jurisdiction requires that the amount in controversy exceed $75,000); *see also* N.J.S.A. 56: 8–19 (mandatory treble damages).

As stated above, the NJUTPA provision at issue is not applicable to the isolated sale of a residence by its owner. Plaintiff has not made any allegations to suggest that the Kanes' sale of the property at issue in this case was anything other than the "the isolated sale of a single family residence by its owner." *DiBernardo*, 502 A.2d at 1168. Therefore, Plaintiff has not properly alleged a NJUTPA claim against the Kanes and, thus, cannot allege damages that exceed $75,000 against

the Kanes. This Court must dismiss the Complaint against the Kanes for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1332(a) (for diversity jurisdiction amount in controversy must exceed $75,000); Fed. R.Civ.P. 12(h) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action") (emphasis added).

■ However, the NJUTPA may still apply to the other Defendants. *See Byrne*, 675 A.2d at 240 (NJUTPA applies to professionals representing non-professional sellers). Claims under the NJUTPA sound in fraud and must meet the pleading requirements of Fed.R.Civ.P. 9(b). *See Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F.Supp.2d 494, 511 (D.N.J.1999) (requirements of 9(b) apply to claims under the NJUTPA). To meet the pleading requirements of Rule 9(b), "the complaint [must] describe the circumstances of the alleged fraud with precise allegations of date, time, or place." *Id.* "Alternatively, plaintiffs must use some means of 'injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). Further, a plaintiff must "plead fraud with particularity as to each defendant." *Id.* However, "'the threshold to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(1) is [ ] lower than that required to withstand a Rule 12(b)(6) motion.'" *Suber*, 104 F.3d at 583 (quoting *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir.1989)).

■ Plaintiffs have not sufficiently pled a NJUTPA claim against Cornell Harbor, Stave, Carnuccio, McCorristin-

Desmond, or Desmond. Plaintiffs make *no* specific fraud allegations against any of these defendants. Thus, Plaintiffs cannot meet the amount in controversy requirement for these defendants, and the Court will dismiss the amended complaint without prejudice as to Cornell Harbor, Stave, Carnuccio, McCorristin-Desmond, or Desmond for lack of subject matter jurisdiction.[1]

■ However, Plaintiffs have sufficiently pled a NJUTPA claim with respect to AREA, Soens, Gallagher, Power Play, Pillar, and Galster. As to AREA and Soens, Plaintiffs allege that: "[o]n or about the [sic] December 13, 1999, Soens represented to Buyers that all of the windows for the Property were new." *See* Plaintiffs' Amended Complaint at ¶ 34. With respect to Gallagher and Power Play, Plaintiffs allege that they sent a letter to Plaintiffs dated December 14, 1999, indicating that the 2000 budget was not available. *Id.* at ¶ 36. This budget presumably could have demonstrated that each unit was going to be assessed for repairs to the bulkhead and docks. Further, with respect to Pillar and Galster, Plaintiff alleges that Pillar inspected the property and issued a report to Plaintiffs that there were no defects with the windows or the bulkhead. *Id.* at ¶ 38. Further, Plaintiffs have attached copies of the pertinent documents to their amended complaint. Considering the lower pleading threshold required for jurisdictional purposes, we find that these allegations along with the supporting exhibits attached to the complaint are sufficient to "'inject[ ] precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting *Se-*

---

1. The Court will allow Plaintiffs twenty (20) days leave from the date of this Memorandum and Order to amend the NJUTPA claim against Cornell Harbor, Stave, Carnuccio, McCorristin-Desmond, and Desmond. If Plaintiffs can plead a NJUTPA claim sufficient to meet the subject matter jurisdictional requirements, the Court will allow Plaintiffs to renew their request that the case be transferred as to these Defendants.

*ville,* 742 F.2d at 791); *see also Suber,* 104 F.3d at 583 (lower pleading threshold required to satisfy 12(b)(1) than 12(b)(6)).

Because we cannot say with legal certainty that Plaintiffs claims against AREA, Soens, Gallagher, Power Play, Pillar, and Galster do not meet the jurisdictional amount in controversy, we will not dismiss the claims against them for lack of subject matter jurisdiction. *See St. Paul,* 303 U.S. at 288–89, 58 S.Ct. 586; *see also Suber,* 104 F.3d at 583. The Court must now proceed to analyze whether we have personal jurisdiction over these defendants.

III. *Personal Jurisdiction*

 Once a defendant raises a personal jurisdiction defense, the burden of establishing the court's jurisdiction rests with the plaintiff. *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). Prior to trial, however, a plaintiff need only make a *prima facie* showing of jurisdiction. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). Further, factual disputes created by the affidavits, documents and depositions submitted for the court's consideration are resolved in favor of the non-moving party. *Friedman v. Israel Labour Party,* 957 F.Supp. 701, 706 (E.D.Pa.1997).

 Under Federal Rule of Civil Procedure 4(e), we apply Pennsylvania law to determine whether personal jurisdiction is proper. Pennsylvania's long-arm statute authorizes both general and specific jurisdiction to the "fullest extent allowed under the Constitution of the United States." 42 Pa. Cons.Stat.Ann. § 5322(b) (Purdon's 1981). Thus, because Pennsylvania's "reach is coextensive with the limits placed on the states by the federal Constitution," *Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products Company,* 75 F.3d 147, 150 (3d Cir. 1996), we apply the familiar two-part test

recently summarized by our Court of Appeals as follows:

First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The determination of whether minimum contacts exist requires an examination of the 'relationship among the forum, the defendant and the litigation,' *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), in order to determine whether the defendant has ' "purposefully directed' " its activities towards residents of the forum. *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). There must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.' *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*Vetrotex,* 75 F.3d at 150–151. " 'Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities' such that the defendant 'should reasonably anticipate being haled into court there.' " *Id.* at 151 (quoting *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 690 (3d Cir.1990) and *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). However, even where the cause of action does not

arise from the defendant's forum related activities, jurisdiction may be based on general jurisdiction where the defendant has maintained "continuous and systematic" contacts with the forum. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

 Each of the Defendants argues that they do not have sufficient minimum contacts with Pennsylvania to allow this Court to exercise personal jurisdiction over them. Plaintiffs make the general allegation that each of the "Defendants made to this district innumberable telephone calls, fax transmissions and other communications to Plaintiffs for the sole purpose of conducting the disputed transaction." (Plaintiffs' Amended Complaint at ¶ 28(d)). Further Plaintiffs make the following specific allegations:

> Defendants Galster and Inspector [sic] forwarded to this district the within described deficient November 7, 1999 inspection report to Plaintiffs.
>
> Defendants Soens and AREA sent to this district a July 5, 2000 fax to Plaintiffs regarding the responses of Defendants Gallagher and Power Play to Plaintiffs' various requests for information.
>
> On September 26, 2000, Defendant Power Play, agent for Sellers, wrote to Plaintiffs in this district soliciting Plaintiffs' business should they wish to sell the Property.

(Plaintiffs' Amended Complaint at ¶ 28(a), (b), and (c)).

---

**2.** In August of 2001, the Court granted Plaintiffs 60 days to conduct discovery on the limited issue of personal jurisdiction. After this time frame elapsed, Plaintiffs did not supplement the information provided to the Court, rather they filed a Motion to Transfer.

**3.** Plaintiffs allege that Power Play made one other contact with them to solicit them to sell

These allegations are insufficient to allow the Court to exercise personal jurisdiction over these Defendants. Defendants have all submitted affidavits establishing that they do not regularly conduct business in Pennsylvania, do not have offices in Pennsylvania, and do not have bank accounts, phone listings, or other similar accounts in Pennsylvania. Thus, the Court does not have general jurisdiction over any of the Defendants.

Further, Plaintiffs' allegations that the Defendants contacted them by phone, fax and mail in furtherance of the contract for the sale of property at issue in this case are insufficient for this Court to exercise specific jurisdiction over the Defendants. It is uncontested that the property in question, the condominium association, the home inspectors, and both the buyers' and sellers' realtors are in New Jersey. All of the material actions in this case, including the inspection of the property, signing of the contract, and communications between the parties either occurred in or emanated from New Jersey. The follow-up contacts the Defendants had with Plaintiffs in Pennsylvania were only necessary to complete the contract. *See Vetrotex,* 75 F.3d at 152 (" 'informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]' "). Plaintiffs have not presented any evidence[2] to establish that this Court can exercise personal jurisdiction over the Defendants.[3] *See Provident Nat. Bank,* 819 F.2d at 437

---

their house. However, this one additional contact is not relevant to the contract at issue in this case and, thus, does not confer specific jurisdiction and is not enough to establish that Power Play has continuous and systematic contact with Pennsylvania such that the Court can exercise general jurisdiction over those Defendants.

(once jurisdiction is challenged, plaintiff has burden of proving that the exercise of jurisdiction is appropriate and cannot merely rely on pleadings). Thus, while the Court finds that we have subject matter jurisdiction over the claims against AREA, Soens, Gallagher, Power Play, Pillar to Post, and Galster, we do not have personal jurisdiction over these Defendants.[4]

### IV. *Motion to Transfer*

 Finally, the Court will consider Plaintiffs' Motion to Transfer. Pursuant to 28 U.S.C. § 1406(a), "a district court that lacks personal jurisdiction [has discretion] to transfer a case in the interest of justice to a district in which personal jurisdiction can be established." *Rister v. Cupon*, No. CIV.A. 01–2897, 2001 WL 1085043 (E.D.Pa. Sept. 17, 2001) (citing *Porter v. Groat*, 840 F.2d 255, 257 (4th Cir.1988)); *see also* 28 U.S.C. § 1631 (case may be transferred to another court in which it could have been brought if there is lack of jurisdiction in present court). The District of New Jersey will have general and specific jurisdiction over the Defendants AREA, Soens, Gallagher, Power Play, Pillar to Post, and Galster. Therefore, the Court finds that, in the interest of having the case decided on the merits, a transfer to the District of New Jersey is appropriate in this case.

### V. *Conclusion*

An appropriate Order follows.

### *ORDER*

AND NOW, this 12th day of March, 2002, upon consideration of the Defendants' Motions to Dismiss and Plaintiffs'

4. Venue is also lacking in this district because none of these Defendants resides in Pennsylvania; the Defendants are not subject to personal jurisdiction in this district; and a substantial part of the events giving rise to Plaintiffs' claims did not occur in this district. *See 28 U.S.C. § 1391(a) & (c)*.

response thereto and for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED as follows:

1. Plaintiffs' claims against Robert C. and Dorothy A. Kane are DISMISSED for lack of subject matter jurisdiction;

2. Plaintiffs' claims against Cornell Harbor Condominium, Lois Stave, Joe Carnuccio, McCorristin–Desmond, and Jack Desmond are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction, and Plaintiffs shall have twenty (20) days from the date of this Order to amend their complaint against Cornell Harbor Condominium, Lois Stave, Joe Carnuccio, McCorristin–Desmond, and Jack Desmond; and

3. Plaintiffs' claims against Tim Kerr's Power Play Realty, Chris Gallagher, Avalon Real Estate Agency, William Soens, Pillar to Post, and Bob Galster are TRANSFERRED to the District of New Jersey.