Randy D. THOMPSON, Plaintiff Below, Appellant,

v.

F.B. CROSS & SONS, INC., Defendant Below, Appellee.

No. 320, 2000.

Supreme Court of Delaware.

Submitted: Dec. 11, 2001.
Decided: March 22, 2002.
Reargument Denied May 7, 2002.

Fred Barakat, Wilmington, Delaware, for appellant.

Christian Singewald, White & Williams, LLP, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

HOLLAND, Justice:

This is an appeal from a final judgment of the Superior Court. The proceeding is a personal injury lawsuit arising from a work related accident that occurred at NVF Corporation's ("NVF") zinc processing plant in Yorklyn, Delaware. The plaintiff-appellant, Randy Thompson, an NVF maintenance employee, was struck in the eye by the lid from a strainer manufactured by Hayward Industrial Products ("Hayward"). Thompson brought this action against Hayward and F.B. Cross & Sons, Inc. ("Cross") alleging that Hayward negligently designed the strainer and that Cross negligently designed, installed and maintained/repaired the strainer and its associated parts, and failed to warn of hazards inherent in the system's design.

Thompson's claim against Hayward was dismissed by an agreement of all parties. The Superior Court granted summary judgment for Cross on Thompson's claims of negligent design, failure to warn and negligent maintenance/repair.[1] The Superior Court denied Cross' Motion for Summary Judgment as to Thompson's claim for negligent installation.[2] That claim alone was the subject matter of a jury trial. The jury returned a verdict for Cross. Thompson's Motion for a New Trial was denied.

Thompson has raised four issues on appeal. Thompson's first argument is that the Superior Court erred, as a matter of law, when it granted partial summary judgment for Cross with regard to his claim for negligent design, failure to warn and negligent maintenance/repair. Second, Thompson submits that the trial judge's instruction that Cross, as an installer, had no duty to investigate the abrasive nature of the liquids strained through the system was erroneous. Third, Thompson contends that the trial judge improperly admitted the testimony of the defendant's expert, William Daley, P.E. Finally, Thompson argues that the trial judge improperly excluded the expert testimony of Alan Levin, M.E.

We have concluded that the Superior Court's entry of summary judgment must be reversed. Accordingly, there must be a new trial on all of Thompson's claims against Cross. Consequently, the evidentiary issues presented by Thompson in this appeal are not addressed and will not constitute the law of the case upon remand.

### *Facts*

NVF operates a zinc processing plant in Yorklyn, Delaware. Thompson, a maintenance employee for NVF, was injured on January 8, 1997 while attempting to clean a strainer. At the zinc processing plant, used liquid slurry settles to the bottom of large tanks and is pumped into the sediment strainer where leaves, stones, sand, wood fibre and other abrasive solids are removed. The remaining slurry is then pumped to a centrifuge to remove water from the diluted acid. The sediment strainer is cleaned every one or two hours as needed.

1. *Thompson v. Hayward Indus. Prods.*, Del.Super., C.A. No. 97C–12–277, 1999 WL 1442011, Quillen, J. (Dec. 30, 1999).

2. *Id.*

Cross had been a significant subcontractor to NVF, having performed numerous process piping jobs at the NVF plant in the preceding five years. NVF hired Cross to replace two pumps that strain acid sludge for recycling. Cross has been engaged in the business of installation of metal and polyvinyl chloride ("PVC") industrial and commercial process piping for over thirty years.

NVF's operations engineer, Bernard Schroeder, initially met with the president of Cross at the Yorklyn plant and requested a quotation for pump replacement work that would replace the existing metal system with PVC. Cross submitted a proposal to NVF which made no reference to any NVF specifications. Cross sent a letter to NVF with a quote attached stating:

We hereby agree to furnish labor, material, equipment, and insurance necessary to perform the following:

1. Pump Replacement for Dortmond Tank -

   a) Remove existing Moyno pump at outlet of tank.

   b) Set new NVF supplied Penn Valley Pump.

   c) Connect suction to tank with 3″ CPVC pipe and fittings.

   d) Run 2″ CPVC discharge off of pump to elevation equal to top of tank, anchor to concrete wall and run down into feed nozzle of Bird unit.

   e) Discharge piping to have valved outlets for polymer, drain at pump, flush line and drain at Bird. Flex joint at Bird feed nozzle.

2. Pump Replacement for Bird Centrifuge

   a) Set new NVF supplied Penn Valley pump on side of Bird opposite existing pump.

   b) Install new transition piece on bottom of Bird.

   c) Connect 3″ CPVC piping from Bird to pump suction complete with 3″ Teflon bellows to eliminate vibration.

   d) Run 2″ CPVC discharge piping through new static mixer to vertical pipe column complete with 2″ shutoff valve and Tees and valves for 1½″ water, pressure gauge, acid addition and drain line.

   e) Connect acid to discharge piping with section of Teflon lined pipe, fittings, ball valve and flex joint.

   f) Pressure gauge to be Teflon diaphragm type suitable for use with HCL.

   g) Pump to be pre-piped as much as possible to minimize down time.

   h) Demo old pump and piping after new pump is in service.

NVF issued a purchase order to Cross which also made no reference to NVF specifications, but simply stated, "per F.B. Cross quote." Before the work commenced, NVF also requested that a water supply line be integrated into the process piping. This apparatus was an addition to the system.

About four months after the installation of the PVC system, Thompson was injured when the lid of the strainer flew off and struck him in the face causing permanent impairment to his left eye. Thompson brought this action against Cross alleging that Cross negligently designed, installed and maintained/repaired the strainer and its parts. Thompson also brought suit against Cross for failure to warn of the hazards inherent in the system's design. Thompson alleged that Cross redesigned the system by replacing the old metal system that had a bolt-down closing device with a PVC screw on lid. According to Thompson, the old metal system should

have been replaced with a PVC lid with a bolt-down device like the previous metal lid.

The Superior Court granted Cross' Motion for Summary Judgment on the claims of negligent design, failure to warn and negligent maintenance/repair. The Superior Court held that Cross as an independent contractor had no duty to redesign the safety feature of the equipment. The claim of negligent installation proceeded to a jury trial.

On February 4, 2000, the jury returned a verdict in favor of Cross. Thompson sought a new trial challenging the partial summary judgment order and claiming errors at trial. After this motion was denied, Thompson filed an appeal to this Court.

### Parties' Contentions

In this case, Thompson argues that Cross owed a duty of care to Thompson because Cross, when hired as an independent contractor to replace a system for NVF, not only replaced the existing system, but also redesigned the system by replacing a metal bolt-down lid with a PVC screw on lid. The original metal strainer used in the system was equipped with bolt-down external closure devices. According to Thompson, the effect of the original type of closure mechanism was that the corrosive, abrasive slurry being strained did not come in contact with the closure mechanism and also provided a safety against an accidental, explosive, pressurized release. The Hayward strainer selected by Cross had a completely different closure device: a plastic, screw-on lid so that the plastic screw threads came into

direct contact with, and were worn down by, the abrasive slurry each time the lid was removed and replaced. According to Thompson, it was this change in the type of closure mechanism that caused the strainer lid to explode.

Cross argues that it did not owe a duty of care to Thompson because under the terms of the contract between Cross and NVF, Cross was only required to "replace" the existing system, not to redesign the system. The Superior Court granted Cross' Motion for Summary Judgment with regard to Thompson's claim for negligent design. In granting that motion, the Superior Court relied on the *LeJeune v. Bliss–Salem, Inc.* decision by the United States Court of Appeals for the Third Circuit.[3]

### Independent Contractor Design Liability

The issue before the Superior Court in deciding Cross' Motion for Summary Judgment was the extent of the duty, if any, Cross, an independent contractor, owed to Thompson. The Third Circuit addressed that issue in *LeJeune.*[4] In that case, an employee was injured when he fell into a gap between steel cylinders that had been refurbished for the employer by Bliss–Salem.[5] LeJeune alleged that the Bliss–Salem Company owed a duty of care to the employee pursuant to the Restatement (Second) of Torts § 404.[6]

Section 404 of the Restatement (Second) of Torts states that "[o]ne who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that im-

3. *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069 (3d Cir.1996) (applying Delaware law).

4. *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069 (3d Cir.1996).

5. *Id.* at 1071; *see also Goebel v. Dean & Assocs.*, 91 F.Supp.2d 1268 (N.D.Iowa 2000).

6. *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d at 1072.

posed upon negligent manufacturers of chattels."[7] In addressing section 404, comment (a) of the Restatement (Second) of Torts, the Third Circuit held that the Restatement "does not impose liability on an independent contractor for work which the independent contractor did not undertake ·to perform .... Rather, it is the scope of the undertaking, as defined in the contract, which gives shape to the independent contractor's duty in tort."[8]

■ In *LeJeune*, the independent contractor did exactly what it had contracted to do and no more. Nevertheless, in *LeJeune*, the plaintiff asserted that the defendant independent contractor had an additional duty to "redesign" the system to eliminate safety problems.[9] The Third Circuit rejected that argument. It held that a duty to design did not exist unless the contract required the defendant to redesign the machine.[10] In the words of the *LeJeune* court, "it is the scope of the undertaking, as defined in the contract, which gives shape to the independent contractor's duty in tort."[11] We agree.

### Design Duty Materially Disputed

■ The record reflects that the facts are distinguishable from those that were extant in *LeJeune*. Cross undertook to replace the metal system at the NVF plant with PVC. The record reflects that NVF did not specify any of the replacement components, but left that selection to Cross' expertise.

The existing system at the NVF plant contained a metal strainer mounted horizontally, with a bolt-on mechanism securing the lid to the housing. The existing system did not contain a water line and,

therefore, a pressure relief valve was not necessary. In installing the new PVC system, Cross arguably changed the design by: mounting the strainer vertically, altering an existing bolt-down feature by selecting a screw-on type PVC lid, and installing the new PVC lid in an abrasive environment. The record also reflects that Cross did not add a pressure relief valve after it installed a new water line, creating what Thompson submits as a potential for greater pressurization of the system.

Thompson asserts that through the use of appropriate care and skill commensurate with its experience Cross should have selected a PVC lid with a bolt-down closure device similar to that which it replaced, which would be impervious to abrasion, and designed the new water line system to include a pressure relief valve. The record reflects a material dispute of fact about whether Cross simply replaced the existing system at the NVF plant or whether the components selected by Cross and the reconfiguration of the system by Cross constituted a design change. Accordingly, the Superior Court should not have granted Cross' Motion for Summary Judgment regarding Thompson's claim for negligent design, failure to warn and negligent maintenance/repair.

### Duty to Investigate

Thompson's second argument is that the trial judge erred by instructing the jury that, with regard to the claim for negligent installation, Cross had no duty to investigate the nature of the material used in the strainer system. At the request of Cross, the trial judge instructed the jury as fol-

---

7. Restatement (Second) of Torts § 404 (1965).

8. *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d at 1073.

9. *Id.*

10. *Id.*

11. *Id.*

lows: "Due to the limited contractual undertaking, F.B. Cross & Sons, Inc., had no duty to investigate the abrasive nature of the liquid in this system. However, the jury may determine that F.B. Cross knew or should have known about the abrasive nature of the liquid in this system." The foregoing instruction by the trial judge was given in the context of Thompson's claim for negligent installation and was based on the previous summary judgment ruling that Cross was not responsible for any design defects.

Cross acknowledges that if it assumed a duty to design, it would also have a correlative duty to investigate the abrasive nature of the liquid in the system. We have already concluded that the entry of summary judgment was erroneous because Thompson's claim of defective design against Cross was a factual dispute for the jury to decide. Therefore, at the next trial, Thompson's claim that Cross breached its duty to investigate the abrasive nature of the liquid in the system should also be submitted to the jury with a proper instruction.

### Expert Testimony

Thompson's last two arguments relate to the trial judge's decisions to permit William Daley to testify for Cross and not to permit Alan Levine to testify for Thompson. Both of these rulings involved expert testimony and were addressed to the discretion of the trial judge in the specific factual context of the first trial. We have concluded that this matter must be remanded for a new trial. Therefore, we will not address the merits of either discretionary ruling. We do hold, however, that neither of those rulings shall constitute the law of the case at the next trial.

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for a new trial.