599 A.2d 984

**Richard Lewis GRAHAM and Paulette Graham, H/W, Appellants,**

v.

**MACHINERY DISTRIBUTION, INC. t/a and d/b/a Mitsubishi and Nippon Yusoki Co., Ltd. t/a and d/b/a Mitsubishi and Omni Lift, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued June 18, 1991.

Filed Oct. 28, 1991.

Reargument Denied Dec. 31, 1991.

268

Ned Hark, Philadelphia, for appellants.

Edward J. McGinn, Jr., Philadelphia, for appellees.

Before ROWLEY, President Judge, and CAVANAUGH and WIEAND, JJ.

WIEAND, Judge:

In this action by Richard and Paulette Graham against Nippon Yusoki, Inc., Ltd. (Nippon) to recover damages for injuries sustained in an accident involving a forklift manufactured by Nippon, the trial court held that it lacked in personam jurisdiction over Nippon, a Japanese corporation. More specifically, the trial court held that plaintiffs had failed to show that Nippon had sufficient contact with Pennsylvania to permit the courts of Pennsylvania to exercise jurisdiction over it consistently with due process. From the dismissal of their complaint on jurisdictional grounds, the plaintiffs appealed. After careful review, we affirm.

The forklift which allegedly caused injury to Richard Graham had been manufactured in Japan by Nippon, a Japanese manufacturer having offices in Kyoto, Japan. The forklift had been sold by Nippon to Mitsubishi Corporation in Japan. Mitsubishi, in turn, had shipped the machinery to Machinery Distribution, Inc. (MDI), a corporation located in Houston, Texas. MDI was engaged in distributing equipment throughout the United States, including Pennsylvania.

■ When a defendant raises an issue of in personam jurisdiction, the plaintiff has the burden of showing that jurisdiction is proper. *Temtex Products, Inc. v. Kramer*, 330 Pa.Super. 183, 190, 479 A.2d 500, 503 (1984); *Crompton v. Park Ward Motors, Inc.*, 299 Pa.Super. 40, 42, 445 A.2d 137, 138 (1982). The power of Pennsylvania courts to exercise jurisdiction over a non-resident defendant is dependent upon two requirements. First, jurisdiction must be authorized by statute; and, second, the exercise of jurisdiction must comport with constitutional principles of due

process. *Kenneth H. Oakes, Ltd. v. Josephson,* 390 Pa.Super. 103, 105, 568 A.2d 215, 216 (1989). The Pennsylvania Long–Arm Statute, 42 Pa.C.S. § 5322(b), authorizes courts to exercise jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States." The inquiry in this case, therefore, is whether holding Nippon amenable to suit in Pennsylvania would violate principles of due process. See: *Koenig v. International Brotherhood of Boilermakers,* 284 Pa.Super. 558, 567, 426 A.2d 635, 639–640 (1980). See also: *Temtex Products, Inc. v. Kramer, supra,* 330 Pa.Super. at 194, 479 A.2d at 505–506.

Due process requires that a defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). These minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

Plaintiff-appellants argue that by placing forklifts into "the stream of commerce for sale throughout the world," Nippon purposefully directed its activities toward Pennsylvania. Jurisdiction, they contend, is appropriate because Nippon participated in a distributive chain which, foreseeably, might result in sales to Pennsylvania buyers. Appellants rely upon a decision by the Superior Court in *Hewitt v. Eichelman's Subaru, Inc.,* 341 Pa.Super. 589, 492 A.2d 23 (1985). *Hewitt,* however, does not support the exercise of jurisdiction over Nippon in the instant case. In *Hewitt,* an action had been filed against Fuji, the Japanese manufacturer of Subaru automobiles. These automobiles had been sold to Subaru of America (SOA), which was Fuji's exclusive importer of Subaru automobiles in the United States. SOA was a New Jersey corporation licensed to do

business in Pennsylvania. Fuji owned more than 49% of the stock of SOA and maintained a liaison office at SOA's principal office in New Jersey. SOA sold Subaru vehicles to franchised distributors who distributed the cars to franchised dealers who, in turn, sold the cars to the public. In Pennsylvania, fifty-three (53) dealers generated a substantial number of sales of Subaru automobiles. The Court held that Fuji was amenable to suit in Pennsylvania because it had placed its automobiles into the stream of commerce in a manner such that it could expect sales to be made in Pennsylvania. The close relationship between the Japanese manufacturer and American importer made it "unlikely that Fuji [was] unaware of the extent of SOA's distribution network." *Id.*, 341 Pa.Superior Ct. at 595, 492 A.2d at 26. Therefore, the court concluded, Fuji had "purposefully availed itself of the privilege of conducting activity in Pennsylvania." *Id.*

In the instant case, the plaintiff-appellants failed to establish facts sufficiently similar to those which caused the *Hewitt* court to hold that Fuji was amenable to suit in Pennsylvania. Nippon did not have an office in Pennsylvania and was not licensed to do business here. It was not shown that Nippon owned MDI stock, that MDI was licensed to do business in Pennsylvania, or that either Nippon or MDI had established an extensive dealership in Pennsylvania. It also was not shown that MDI was Nippon's exclusive American importer. Indeed, it was not even shown how the forklift which injured the husband-plaintiff found its way into Pennsylvania. The record, in short, was entirely inadequate to show that Nippon had made any conscious effort to serve the Pennsylvania market.[1]

---

1. We find no merit in plaintiffs' contention that because Nippon Yusoki, Inc., Ltd. had an "export ratio of 19% in 1986", sufficient minimum contacts exist with Pennsylvania to justify in personam jurisdiction. This statistic proves nothing unless supported by documentation indicating the percentage of forklift exports which were sent to the United States and, ultimately, Pennsylvania. Similarly, the fact that the forklift's owner's manual was published in English is not persuasive, as the market for these machines is worldwide and English is not only spoken in the United States.

The Supreme Court of the United States has made it clear that foreseeability alone is not a sufficient benchmark for personal jurisdiction under the due process clause. In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court explained:

> If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there, a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey, or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there. Every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel....

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. (citations omitted).

*Id.* at 296–297, 100 S.Ct. at 566–567, 62 L.Ed.2d at 500–501.

The stream of commerce theory was more recently considered by the Supreme Court in *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion). There, the plaintiff had been injured in a motorcycle accident and filed a product liability action in which he contended that the tire, tube and sealant had been defective. The complaint named Cheng Shin Rubber Industrial Co., Ltd. ("Cheng Shin"), the Taiwanese manufacturer of the tire tube, as a defendant. A third-party complaint was subsequently filed against Asahi, the Japanese manufacturer of the tube's valve assembly. Following settlement of the motorcycle driver's claims, the only unresolved action was the indemnity claim between Cheng Shin and Asahi. The record showed that Asahi had manufactured the tire valve assemblies in Japan and sold the valves to Cheng Shin for

use as components in the finished tire tubes. This sale had taken place in Taiwan. Cheng Shin had purchased valve assemblies from other suppliers and sold finished tubes throughout the world. Asahi's sales to Cheng Shin accounted for 1.24% of its income in 1981 and 0.44% in 1982. Cheng Shin produced an affidavit from one of its managers which asserted that Asahi had been aware that its valve assemblies would be sold throughout the United States and California. An Asahi manager, however, filed an affidavit denying any awareness that its sale of tire valves to Cheng Shin would subject it to litigation in California.

The Court rejected Cheng Shin's argument that Asahi was subject to suit in California because it had placed the valve assemblies into the stream of commerce. Justice O'Connor, writing the lead opinion, determined that Asahi had lacked the minimum contacts necessary to support jurisdiction because Asahi had not purposefully directed activity towards California. She wrote:

The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed towards the forum State. *Additional conduct* of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, *designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.* But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed towards the forum State.

Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. It did not create, control, or employ the distribution system that brought its valves to California. There is no evi-

dence that Asahi designed its product in anticipation of sales in California.

*Asahi Metal Industry Co., Ltd. v. Superior Court of California, supra,* 480 U.S. at 112, 107 S.Ct. at 1032, 94 L.Ed.2d at 104–105 (emphasis added) (citations omitted).

So in the instant case, there is no evidence that Nippon designed its forklift in anticipation of sales in Pennsylvania. Similarly, there is no evidence that Nippon advertised its product in Pennsylvania, established channels for providing regular advice to customers in Pennsylvania or marketed the product through a Pennsylvania distributor who was acting as an agent for Nippon. The evidence does not show that Nippon has any agents or employees in Pennsylvania or that it solicits business in Pennsylvania. Under these circumstances, the courts of this Commonwealth cannot exercise in personam jurisdiction over Nippon merely because it was foreseeable that its forklift might find its way into Pennsylvania.

■ Jurisdiction is proper only "where the contacts [with a state] proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 542 (1985) (emphasis in original). See: *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957). Where third parties with a relationship to a non-resident defendant engage in unilateral activity in the forum state, the requirement that the defendant have minimum contacts with the forum is not satisfied. *Skinner v. Flymo,* 351 Pa.Super. 234, 242, 505 A.2d 616, 620 (1986), citing *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416–17, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404, 412 (1984).

■ Insofar as can be determined from the record in the instant case, Nippon's only activity was to manufacture and

sell a forklift to Mitsubishi. The manufacture of the equipment and its sale by Nippon took place in Japan. Nippon did not select a distributor in the United States or control Mitsubishi's selection of such distributor. We conclude, therefore, that Mitsubishi's unilateral act of shipping the forklift to MDI in the United States, where it was sold and ultimately found its way into Pennsylvania, is insufficient to support in personam jurisdiction over Nippon in Pennsylvania.

For these reasons, we hold that the trial court did not err when it dismissed appellants' complaint against Nippon for lack of in personam jurisdiction. Nippon did not purposefully direct any activity toward Pennsylvania that would subject it to jurisdiction in the courts of this Commonwealth.

Order affirmed.