The AMERICAN ANGUS ASSOCIATION,
Plaintiff,

v.

SYSCO CORPORATION, Sysco Food
Services, Inc., and Bell Sysco Food
Services, Inc., Defendants.

Civ. No. 1:92CV190.

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 20, 1993.

David M. Carter, Carter & Schnedler, Asheville, NC, and Richard T. Rossier and Marc Miller, McLeod, Watkinson & Miller, Washington, DC, for plaintiff.

Steve Rosenblatt, Paula Morris, Rosenblatt & Associates, P.C., Houston, TX, and Joseph P. McGuire and Richard Wood, McGuire, Wood & Bissette, P.A., Asheville, NC, for defendants.

## MEMORANDUM OF OPINION AND ORDER

RICHARD L. VOORHEES, Chief Judge.

**THIS MATTER** is before the Court on Plaintiff's Motion to Dismiss Counterclaim, to Strike Certain Affirmative Defenses, for Partial Summary Judgment, and alternatively, for a More Definite Statement, filed December 18, 1992, and renewed February 16, 1993. Because the Motion for Partial Summary Judgment is separable from the others in that the Court may consider material outside the pleadings as to that issue only, the Court will address that issue in a separate order filed contemporaneously with this Memorandum.

Having considered Plaintiff's motion, Defendants' memorandum in opposition, Plaintiff's reply, Defendants' first amended answer and counterclaims, Plaintiff's second motion to dismiss, and Defendants' response to that motion, the Court will grant Defendants' motion to amend their counterclaim and defenses, deny Plaintiff's motions, and grant Defendants' motion to dismiss their own counterclaim for tortious interference with contract or potential contract.

## I. DEFENDANTS' AMENDED COUNTERCLAIM AND DEFENSES

As a threshold matter, Plaintiff objects to Defendants' First Amended Answer and Counterclaims, filed February 1, 1993. The thrust of this objection is that, while Defendants' amendments were allowable inasmuch as no responsive pleading had yet been filed, Defendants did not request leave of the Court, which is required when, as here, the amendment is offered more than 20 days after the original pleading was served. Fed.R.Civ.P. 15(a) (1991).

Permission for such an amendment "shall be freely given when justice so requires." *Id.* The Court finds that Plaintiff has not advanced, and indeed has not suffered, any prejudicial effect which would result from allowance of the amendment. This fact in no way excuses Defendants for unilaterally amending their answer when the Federal Rules of Civil Procedure very clearly require leave of Court. However, justice requires that a party be allowed to have all of its claims and defenses heard on the merits unless that party's failure to articulate the claim before the amendment harms the adverse party's ability to press its claims and defenses. Thus, the Court finds that justice requires the Defendants be granted leave to amend their answer, and the Court will consider Defendants' First Amended Answer and Counterclaim in considering Plaintiff's motions.

## II. THE MOTION TO DISMISS COUNTERCLAIM

### A. Legal Standard

In ruling on a motion to dismiss, the Court may not consider evidence outside the pleadings themselves, else the motion becomes a motion for summary judgment. Fed.R.Civ.P. 12(b). Since, in this case, the parties have presented only one issue in a proper motion for summary judgment (which will be addressed in an order filed contemporaneously herewith), the Court will not go

beyond the pleadings on any of Defendants' contentions except for that one. *Cf. Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1471–72 (4th Cir.1991) (**Court may not convert motion to dismiss into motion for summary judgment unless parties have had fair notice that the Court was going to do so, thereby allowing all parties to present necessary factual background**).

■ The Court may not dismiss the allegations in the complaint (in this case a counterclaim) unless Plaintiff can prove no set of facts entitling it to relief. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). On the other hand, the "generalized statement of facts" normally required in a complaint is insufficient if the allegations in the pleading "do not reasonably follow from [the pleader's] description of what happened." *Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977) (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1357). Thus, the Court will examine each count of Defendants' counterclaim to determine if Defendants' statement of "what happened" could reasonably support a set of facts entitling Defendants to relief.

## B. False Advertising

■ In order to make out a claim for false advertising, Defendants must allege: (1) that Plaintiff's advertisements were false or misleading; (2) that they were actually or likely deceptive; (3) that they were material in their effect on buying decisions; (4) that they were connected with interstate commerce; and (5) that they were actually or likely injurious to Defendants. *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 964 (D.C.Cir.1990). Defendants clearly allege that Plaintiff made false or misleading statements, specifically that Plaintiff has claimed that it has an exclusive right to use the

words "Angus beef," that Plaintiff is the only Angus beef certification program certified by the U.S. Department of Agriculture (USDA), and that Defendants' inspection system is unreliable or should not be trusted. **Defendants' First Amended Answer and Counterclaims, filed February 1, 1993 at 13.** Defendants also allege each of the other elements in a conclusory fashion. *Id.* at 25. The Court finds that, although the allegations of the statements' deceptiveness, materiality, interstate nature, and injurious nature are not supported by any independent facts, Defendants, by alleging that the statements are false, have sufficiently presented a generalized statement of facts from which it might reasonably follow that Defendants would be entitled to relief.[1] Thus, the Court will deny Plaintiff's motion as to the claim for false advertising.

## C. Cancellation of Mark

■ Contrary to allegations in Plaintiff's motion to dismiss, Defendants have not merely "parroted" the statute, and Defendants have alleged facts to underlie their claim for cancellation. Specifically, Defendants have alleged that: (1) "Plaintiff has entered into agreements with third party slaughterhouses, meat distributors, volume feeders, restaurants, grocery stores, and/or other institutions, without exercising control over how such third parties use the mark ... [f]or example [by permitting] others to use the mark on stationary [sic] and on grocery bags which may be used to carry many different goods besides beef;" (2) "Plaintiff, itself, engages in the production or marketing of Angus beef through its Certified Angus Beef Program, its members, and its licensees;" (3) "Plaintiff permits the use of its mark for purposes other than certification ... [for example] ... to indicate origin;" (4) "Plaintiff discriminately refuses to certify or to continue to certify goods or services of

---

1. A theme which recurs throughout Plaintiff's motion is that a motion to dismiss is the proper way to challenge a claim which Plaintiff believes is frivolous. The Court disagrees. If Defendants have set forth a claim which might be supported if Defendants can muster sufficient factual proof, then Defendants have successfully defeated the motion to dismiss. If, after discovery, Defendants claims appear frivolous, then Plaintiff may attack those claims on summary judgment, and follow a successful attack with a motion for sanctions pursuant to Fed.R.Civ.P. 11. The result of Plaintiff's strategy is now a lengthy yet wholly unnecessary order expending judicial resources which would be better spent on assessing the factual viability of these obviously legally supportable claims.

third parties who maintain the standards and conditions which the mark allegedly certifies;" and (5) "all the elements of Plaintiff's registration [the phrase "Angus beef," the phrase "certified Angus beef," and an outline of a steer] ... both individually and combined, are generic." **First Amended Answer and Counterclaims at 10–11.** While much of this language does "parrot" the statute, the Court finds that Defendants have sufficiently set forth a generalized statement of facts from which it might reasonably follow that Defendants are entitled to relief. Thus, the Court will deny Plaintiff's motion as to the claim for cancellation of the mark.

### D. Combination in Restraint of Trade and Monopolization

In these counts, Defendants allege that Plaintiff has violated the antitrust laws by: (1) "entering into license agreements with its distributors which horizontally restrict said distributors' territories and/or customers, thereby preventing horizontal competition among distributors of beef which bear [sic] Plaintiff's certification mark;" (2) illegally refusing to deal with Defendants; and (3) illegally tying the use of the certification mark to the purchase of beef from particular sources.[2] **Defendants' Memorandum in Opposition, filed January 11, 1993, at 9–12.** Plaintiff contends that Defendants have insufficiently pled any antitrust violation because they have neglected to identify the relevant market affected, and further argues that each allegation is legally insufficient because each alleges an insufficient factual basis for the claim.

### 1. *Relevant Market*

■ Plaintiff first argues that Defendants have failed to define the relevant market, either product or geographic, allegedly affected by Plaintiff's conduct. However, Defendants have pled interference with the market in "beef certified as Angus beef."

**Defendants' First Amended Answer and Counterclaims at 21.**[3] The Court agrees with Defendants that the mere fact that this action is one in federal trademark infringement between two large national organizations is sufficient to plead interference with the national market in certified Angus beef.

Plaintiff further argues that Defendants' inarticulateness in identifying the market as the "Angus beef" market rather than the "certified Angus beef" market caused sufficient confusion such that Plaintiff could not identify Defendants' allegation. The Court agrees with Defendants that

> Sysco inadvertently may not have used the words "beef bearing AAA's certification mark" or "certified Angus beef" every time that it referred to the relevant market; however, those terms appear consistently throughout Sysco's allegations. [However, o]ne would have to strain in order to miss the fact that Sysco's pleading defines the relevant market as beef that has been "certified" as Angus beef.

**Response to Plaintiff's Motion to Dismiss Amended Complaint, filed March 1, 1993, at 2.** While the Court finds that Defendants' pleading was sufficient to identify the relevant product market, Plaintiff's point is not lost on the Court. While the Court rejects Plaintiff's argument that Defendants' lack of clarity failed to identify the relevant market, the Court notes the importance of identifying the relevant market to the party allegedly interfering with it, and the fact that these parties are large, national organizations represented by able counsel. That much being said, the Court will deny Plaintiff's motion as to Defendants' alleged failure to identify the relevant product and geographical markets.

### 2. *Market Interference*

■ Plaintiff argues that

> [o]nce the question of a *per se* violation of Section 1 is passed, an adverse impact

---

2. Defendants' First Amended Answer and Counterclaims is not very clear as to these particular claims. That being the case, the Court accepts Defendants' characterization of these claims as expressed in their Memorandum in Opposition. Because of the Court's leniency in interpreting Defendants' pleadings, Defendants will not be heard to argue that Counterclaims Three and Four allege additional antitrust violations.

3. Defendants' pleading also refers to the relevant market as the market in "Angus beef." *Id.* at 17–18. The distinction is material but forgivable at this early stage. *See* **discussion** *infra.*

upon competition must be alleged to support a Section 1 count. Nowhere in the pleadings, other than in sweeping, conclusory statements, is there any allegation of adverse impact upon competition. **Plaintiff's Motion to Dismiss at 13 (citations omitted).** However, Defendants have specifically pled that Plaintiff's "license agreements ... illegally restrict the activities of slaughterhouses, distributors, retailers, grocery stores, restaurants, and other institutional customers for no reason allowed under the law." **Defendants' First Amended Answer and Counterclaims at 15.** Apparently, Plaintiff argues that Defendants must include complex market and statistical analyses or other non-sweeping, non-conclusory statements *in their pleadings* in order that the Court may infer that Plaintiff is alleging an antitrust violation. The Court is unwilling to accept that view of notice pleading, and will thus deny Plaintiff's motion as to Defendants' claim that Plaintiff illegally interfered with the market in certified Angus beef.

### 3. *Refusal to Deal*

■ Plaintiff contends that Defendants have made no specific allegation of a refusal to deal, and no specific factual allegation of adverse impact. Defendants have alleged "deliberate and discriminatory refusals to deal with various third parties, including slaughterhouses and distributors." **Defendants' First Amended Answer and Counterclaims at 18.** Similarly, Defendants have alleged that "the supply of Angus beef bearing AAA's certification mark has been deliberately reduced in order to ensure significant premiums over choice beef at all levels in the Angus beef market." *Id.* The Court finds that these allegations are sufficient to plead an antitrust violation, since a deliberate reduction in supply of certified Angus beef would have an obvious impact on potential competitors.[4] Thus, the Court will deny Plaintiff's motion as to Defendants' claim for refusal to deal.

### 4. *Illegal Tie-Ins*

Defendants allege that Plaintiff has violated the Sherman Act, 15 U.S.C. § 1, by "ty-

ing" the use of its trademark to the purchase of Plaintiff's certification service. In plain terms, Defendants allege that Plaintiff's requirement for use of its mark—in order to use Plaintiff's mark a distributor must use Plaintiff's own certification service—is an illegal restraint on competition among potential certification services.

■ It is clear that a tying arrangement is unlawful under the Sherman Act. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984). It is equally clear that, to show a tying arrangement, Plaintiff must show that there are two separate products involved, the tying product and the tied product. *Krehl v. Baskin–Robbins Ice Cream Co.,* 664 F.2d 1348, 1352 (9th Cir.1982). A trademark may be considered separate from the "product" to which it is attached in certain circumstances. *Siegel v. Chicken Delight, Inc.,* 448 F.2d 43, 48 (9th Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972).

■ To determine whether the trademark is a separate product for purposes of this analysis, courts look to the relationship between the party selling the trademark and its attached "product" and the party buying the same. *Krehl,* at 1353. The reviewing court must determine whether the relationship is a "business format" system or a "distribution" system.

> A business format franchise system is usually created merely to conduct business under a common tradename. The franchise outlet itself is generally responsible for the production and preparation of the system's end product. The franchisor merely provides the trademark and, in some cases, supplies used in operating the franchised outlet and producing the system's product.
>
> . . . .
>
> Where a distribution system ... is involved, significantly different considerations are presented. Under the distribution type system, the franchised outlets serve merely as conduits through which the trademarked goods of the franchisor

---

4. This "obvious" impact must still be proven by Defendants.

flow to the ultimate consumer. These goods are generally manufactured by the franchisor or, as in the present case, by its licensees according to the detailed specifications. In this context, the trademark serves a different function. Instead of identifying a business format, the trademark in a distribution franchise system serves merely as a representation of the end product marketed by the system.

*Id.* (citations and footnote omitted).

In a business format system, the use of the trademark and its accompanying goodwill and recognition value are sold as the "product." Thus, if additional products are "tied" (required as part of the deal) to the sale of the use of the trademark, such an arrangement can violate the antitrust laws. On the other hand, in a distribution system, the "product" sold with the trademark is exactly the representation of the trademark.

[S]ale of substandard products under the mark would dissipate the goodwill and reduce the value of the trademark ... [T]he tie-in doctrine can have no application where the trademark serves only to identify the alleged tied product. The desirability of the trademark and the quality of the product it represents are so inextricably interrelated in the mind of the consumer as to preclude any finding that the trademark is a separate item for tie-in purposes.

*Id.* at 1354.

Thus, the question in this case is whether the mark represents a separate "product" from Plaintiff's certification service. In other words, does the mark have some value to potential "licensees" beyond the value of the certification procedure itself. If Plaintiff's mark is a representation of goodwill *in addition to* a representation of its certification procedures, then an agreement by which distributors must display Plaintiff's mark in order to receive the certification would be illegal. On the other hand, Plaintiff is free to promote the certification procedure itself, and may use its registered mark to do so as long as the mark represents nothing more

than a procedure of certification. Clearly, if the distribution agreements in question resemble the latter, there can be no illegal tie-in. *Id.; see Smith v. Mobil Oil Corp.,* 667 F.Supp. 1314, 1320–1324 (W.D.Mo.1987) **(thorough discussion of the framework of analysis).**

Plaintiff argues that "[i]t is obvious that the 'Certified Angus Beef' mark does not describe a business format, but rather represents the certification of certain end products to which it is attached." **Plaintiff's Motion to Dismiss at 17.** Such a statement implies that it is obvious that the relevant market attaches no significance to Plaintiff's mark beyond the representation of Plaintiff's particular certification procedure. While that may be obvious to Plaintiff, it is not relieved from its burden, as moving party, of proving that fact to the Court. Recognizing that parties must have the opportunity to address the factual basis of a claim before such claim is dismissed, *see* discussion *supra,* the Court finds that Defendants have sufficiently alleged an illegal tie-in arrangement, and will deny Plaintiff's motion without prejudice to renewal of the same argument in a proper motion for summary judgment.[5]

**E. Deceptive Trade Practices/Tortious Interference**

The Court will allow Defendants to withdraw their claim for tortious interference with contract, so this Order will only address Plaintiff's argument that Defendants have insufficiently pled a violation of the North Carolina Deceptive Trade Practices Act. Contrary to Plaintiff's argument, Defendants have, in fact, provided fair notice to Plaintiff of what statements are the basis of the claim. Defendants have specifically alleged numerous statements regarding Plaintiff's legal rights and authority as to their certification mark. The Court finds that the allegation of these statements is sufficient to *allege* a violation of the Act, and thus will deny Plaintiff's motion as to Defendants' claim for deceptive trade practices.

**5.** Plaintiff argues that, even if the mark is a separable product, Defendants have not sufficiently alleged that Plaintiff possessed the requisite power to control the market. The Court again finds that market analyses are not required in the pleadings, and that Defendants have sufficiently *alleged* sufficient market power.

## III. THE MOTION TO STRIKE AFFIRMATIVE DEFENSES

Plaintiff argues that Defendants' affirmative defenses B, C, D(1)[6], and D(2)

> constitute a frontal attack on [Plaintiff's] certification mark registration just as Count II of the counterclaim. Just as this court should not permit [Defendants'] counterclaim to remain in this case as a counterclaim, it should not permit these related affirmative defenses to remain in the case as well.

*Id.* Similarly, Plaintiff argues that

> [t]he allegations underlying [affirmative defense E] are the same allegations underlying Counts III and IV of the counterclaim which assert antitrust claims against [Plaintiff]. Just as Counts III and IV of the counterclaim fail to state a claim, so too Defense E ... should be stricken as legally insufficient.

*Id.* at 24. Because the Court has found Defendants' pleading legally sufficient to support their counterclaims, the Court also finds the pleading legally sufficient to support the parallel affirmative defenses. Thus, the Court will deny Plaintiff's motion to strike affirmative defenses.

## IV. MOTION FOR MORE DEFINITE STATEMENT

For the aforementioned reasons, the Court finds that Defendants' First Amended Answer and Counterclaims is not so vague or ambiguous that Plaintiff cannot reasonably be required to frame a responsive pleading. Fed.R.Civ.P. 12(e). Thus, the Court will deny Plaintiff's motion for a more definite statement.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' motion to amend their counterclaim and defenses is **GRANTED,** and Defendants' First Amended Answer and Counterclaim is hereby **ACCEPTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to dismiss counterclaims is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss its claim for tortious interference with contract or potential contract is **GRANTED** and the claim is hereby **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike affirmative defenses is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for a more definite statement is **DENIED.**

---

6. Because Defendants have labelled two defenses as "affirmative defense D," the Court will, as did Plaintiff, refer to them as "affirmative defense D(1)" and "affirmative defense D(2)." **Plaintiff's Motion to Dismiss at 23 n. 8.**