**In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000.**

**No. 02 Civ. 3101.**

**MDL No. 1428(SAS).**

United States District Court, S.D. New York.

Aug. 14, 2002.

Robert Swift, Martin J. D'Urso, Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Nagel, Rice, Dreifuss & Mazie, LLP, Edward D. Fagan, Fagan & Associates, Livingston, NJ, Kenneth Nolan, Christina Frye, Speiser, Krause, Nolan & Granito, New York City, for Plaintiffs.

Arnd N. von Waldow, Patricia E. Antezana, Reed Smith LLP, Pittsburgh, PA, for Defendant BRC.

Arthur J. Liederman, Matthew B. Anderson, Morrison, Mahoney & Miller, LLP, New York City, for Defendant Bosch Rexroth AG.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs filed several actions against numerous defendants, alleging that they

caused a ski train fire that killed plaintiffs' children and grandchildren on November 11, 2000 in Kaprun, Austria. The Judicial Panel on Multidistrict Litigation consolidated these suits for pretrial purposes before this Court. Defendants Bosch Rexroth Corporation ("BRC") and Bosch Rexroth Aktiengesellschaft ("Bosch Rexroth AG") now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and pursuant to the doctrine of forum non conveniens. Bosch Rexroth AG also moves to dismiss for lack of personal jurisdiction. For the reasons set forth below, the motions are denied in their entirety.

## I. BACKGROUND

BRC is a United States corporation with its principal place of business in Bethlehem, Pennsylvania. *See* Amended and Consolidated Complaint ("Consolidated Complaint" or "Consol. Compl.") ¶ 17 (referring to "Bosch Rexroth Hydraulics USA"). Bosch Rexroth AG is a multinational corporation with its principal place of business in Lohr am Main, Germany. *See id.* ¶ 16. Robert Bosch GmbH, headquartered in Stuttgart, Germany, which owns "Bosch Group" or "Bosch," is a holding company and the ultimate parent company of Bosch Rexroth AG. *See* Plaintiffs' Opposition to Defendants' Motions to Dismiss ("Pl.Opp.") at 3 (citing Undated Website, November News: *Control Engineering Online* (*"Engineering Online "*), Ex. 3 to Pl. Opp. at 2). It is unclear whether Robert Bosch GmbH or Bosch Rexroth AG, or some other entity, owns or has a controlling interest in BRC.[1]

## II. WHETHER PLAINTIFFS STATE A CLAIM

The defendants move to dismiss the case against them on the ground that plaintiffs fail to state a claim upon which relief can be granted. *See* BRC's Memorandum in Support of Its Motion to Dismiss ("BRC Mem.") at 5; Bosch Rexroth AG's Memorandum in Support of Its Motion to Dismiss ("BR AG Mem.") at 8.

### A. Legal Standard

A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (quotation marks and citation omitted). "At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998)). The task of the court in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Sims*, 230 F.3d at 20 (quoting *Ryder Ener-*

---

**1.** In the original complaint filed in the Eastern District of Pennsylvania, plaintiffs sued "Rexroth Corporation, Hydraulics Division" and "Bosch Rexroth AG, successor in interest to Mannesmann Rexroth." 8/17/01 Complaint Filed in the Eastern District of Pennsylvania, No. 01 Civ. 4201 ("Original Complaint"), Ex. 1 to 7/19/02 Declaration of Arnd N. von Waldow, Counsel to BRC ("7/19 Waldow Decl."), at 1 (caption). Rexroth Corpo- ration, Hydraulics Division is actually BRC. *See* Waldow Decl. ¶ 1. References in the Consolidated Complaint to "Bosch Rexroth" denote Bosch Rexroth AG. *See* Consol. Compl. at 15 n. 8 (explaining that "Bosch Rexroth" refers to the successor to Mannesmann Rexroth AG, Bosch Rexroth AG); *Engineering Online* at 2 (explaining that all business activities of Mannesmann Rexroth AG would be transferred to Bosch Rexroth AG).

*gy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quotation marks omitted)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "take as true all of the allegations contained in plaintiff's complaint and draw all inferences in favor of plaintiff." *Weinstein v. Albright,* 261 F.3d 127, 131 (2d Cir.2001).

## B. The Governing Complaint

■ There is some dispute as to which complaint governs this case. Defendant Bosch Rexroth AG argues that the Original Complaint filed by plaintiffs in the Eastern District of Pennsylvania controls. *See* BRC Mem. at 3 n. 1; BR AG Mem. at 14–15; BRC's Reply Memorandum in Further Support of Its Motion to Dismiss ("BRC Reply") at 1–4. Plaintiffs argue, in turn, that the Court must look to the Consolidated Complaint to decide these motions. *See* Pl. Opp. at 1–2.

On December 21, plaintiffs filed their Consolidated Complaint in the MDL proceeding before this Court. The Consolidated Complaint has never been filed in the Eastern District of Pennsylvania, nor did plaintiffs seek to amend their claims against BRC in that action. *See* BRC Reply at 2–3. On November 19, 2001, the MDL Panel transferred several actions to this Court and conditionally transferred others, including this action. On January 9, 2002, BRC filed a Notice of Opposition to the MDL Panel's Conditional Transfer Order, which BRC contends "automatically stayed the effect of the Conditional Transfer Order[, meaning] that this Court's jurisdiction over plaintiffs' claims against BRC had not yet attached." On April 17, 2002, the MDL Panel issued a Transfer Order denying BRC's motion to vacate the Conditional Transfer Order. The Transfer Order sent plaintiffs' claims to this Court " 'for inclusion in the coordinated or consolidated pre-trial proceedings occurring [here]in.' " *Id.* (quoting 4/17/02 Transfer

Order). On May 2, 2002, plaintiffs served BRC with a copy of the Consolidated Complaint. *See* 5/02/02 Letter from Robert A. Swift to Arthur Liederman (stating that he was serving the Consolidated Complaint on Bosch Rexroth AG, and also on BRC).

Defendant BRC argues, incorrectly, that the Original Complaint has never been amended. A party may amend "once as a matter of course before a responsive pleading is served ...." Fed.R.Civ.P. 15(a). Here, this Court granted plaintiffs leave to amend their complaints in the MDL proceeding on December 13, 2001, whereas BRC first moved to dismiss in the Pennsylvania action on December 21, 2001. However, BRC was not a party to the MDL action at that time; hence, plaintiffs' argument that they amended their pleading with respect to BRC before a responsive pleading was served, *see* Pl. Opp. at 2, is erroneous. Nevertheless, "a party may amend the party's pleading ... by leave of court or by written consent of the adverse party; and leave shall be freely given." Fed.R.Civ.P. 15(a). District courts have great discretion when deciding whether or not to grant leave to amend. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Courts have agreed in some cases to consider an amended complaint served without judicial permission as long as the court would have granted leave to amend if it had been sought and none of the parties would be prejudiced by allowing the change. *See, e.g., American Angus Ass'n v. Sysco Corp.,* 865 F.Supp. 1174, 1175 (W.D.N.C.1993); *Hicks v. Resolution Trust Corp.,* 767 F.Supp. 167, 170 (N.D.Ill.1991). Here, the Court granted plaintiffs leave to file the Consolidated Complaint in the MDL proceeding, which now includes BRC and Bosch Rexroth AG. To the extent that plaintiffs' service of the Consolidated Complaint on BRC was served without judicial permission, this Court *would* have granted leave to amend the Complaint had it been

sought. Neither defendant shows it has been prejudiced by this amendment.

BRC's remaining arguments are without merit. It argues that the claims against BRC were "certainly not transferred to the MDL proceeding for trial under the Consolidated and Amended Complaint which had been filed in only the MDL proceeding." *Id.* BRC also argues that the Master Complaint "seeks to circumvent the MDL Panel's clear and unambiguous directive that the matter be sent to this Court only for 'pretrial proceedings,'" *id.* (quoting 4/17/02 Transfer Order). This Court will not try the cases transferred to it, but rather will make all pretrial decisions in accordance with the 4/17/02 Transfer Order. This includes determining whether the parties have successfully amended any pleadings they purport to have amended. The Original Complaint filed in the Eastern District of Pennsylvania is hereby deemed amended by the Consolidated Complaint.[2]

## C. The Allegations

■■■■ Bosch Rexroth AG is alleged to have negligently "designed, constructed, modified, recommended, installed and/or tested the hydraulic[s] system of the [ski train involved in the accident ('Train')]." Consol. Compl. ¶ 19. Plaintiffs allege that BRC was "involved in the [negligent] design, manufacture, installation and/or modification of the hydraulics system in the Train." *Id.* ¶ 27. That hydraulics system is alleged to have been dangerously defective because it contained "plastic pipes, connectors and hydraulic oil that were highly flammable and unsafe." *Id.* ¶¶ 28, 32 (citing various reports made by Austrian criminal investigators).

Defendants do not argue that these allegations fail to state a claim under Austrian law or the law of any other state.[3] Rather, BRC complains that (1) "plaintiffs do not identify and/or differentiate the role or involvement of BRC and Bosch Rexroth AG with respect to the Kaprun accident"; and (2) "plaintiffs have not identified a single product or component of the ski train at issue that BRC has in any way designed, manufactured, supplied or serviced [or] identified any specific act of omission and/or commission by BRC giving rise to plaintiffs' decedents' deaths." BRC Mem. at 4. Similarly, Bosch Rexroth AG contends that plaintiffs have not identified a "single product or component" of the Train that has been manufactured or designed and/or tested by it. BR AG Mem. at 8. Thus, defendants seem to argue that plaintiffs fail to satisfy Rule 8 of the Federal Rules of Civil Procedure.[4]

2. Plaintiffs are strongly advised to request leave of court to amend their complaints in the constituent actions in this MDL by requesting leave to adopt the Consolidated Complaint in each action. They are also advised to keep better records as to when events occur. Plaintiffs' unsupported assertion that "Bosch Rexroth Corporation's counsel had a copy of the Consolidated Amended Complaint in December 2001 or January 2002," Pl. Opp. at 2, is as unhelpful as it is imprecise.

3. That is, defendants do not contest that the allegations, if proven, would entitle plaintiffs to recovery under Austrian law for: negligence including design defect and failure to warn, product liability, breach of implied warranty, and/or wrongful death. *See* Declaration of Georg E. Kodek, Austrian Judge in Eisenstadt, Austria, Ex. B to 5/17/02 Declaration of Arnd N. von Waldow ("5/17 Waldow Decl."), ¶¶ 2.1–2.2 (listing causes of action available under Austrian law).

4. Each defendant also contests plaintiffs' factual allegations. BRC has submitted sworn declarations to the effect that no product or part manufactured in Pennsylvania could possibly have been in the Train—after plant managers and controllers exhaustively reviewed and examined BRC's purchase orders, shipping orders and sales invoices for products shipped to Europe. *See* 7/19/02 Affidavit of Gregory Andricopulos, Vice President at BRC in Hoffman Estates, Illinois, Ex. 3 to 7/19

If plaintiffs provide a "short and plain statement," Fed.R.Civ.P. 8(a)(2), that gives the defendant "fair notice of what [ ] plaintiff[s'] claim is and the grounds upon which it rests," a complaint may not be dismissed at this stage of the proceeding. *Conley v. Gibson*, 355 U.S. at 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "Rule 8's simplified pleading standard applies to all civil actions, with limited exceptions [such as fraud]." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). "A complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002) (Posner, J.) (citing *Swierkiewicz*, 122 S.Ct. at 998–999). Here, the allegations in the Consolidated Complaint are sufficient to put Bosch Rexroth AG and BRC on notice of the charges against them, *i.e.*, negligence, strict liability, wrongful death, and the grounds upon which they rest, *i.e.*, that each corporation allegedly participated in the design, manufacture and/or testing of defective plastic pipes, connectors, and hydraulic oil that contributed to the accident in Kaprun,

Austria on November 11, 2000. Thus, contrary to defendants' arguments, which are premised on the Original Complaint, the Consolidated Complaint does identify specific products and components of the hydraulics system that plaintiffs claim are defective.

"The courts keep reminding plaintiffs that they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories." *Higgs*, 286 F.3d at 439 (applying *Swierkiewicz*, 122 S.Ct. at 998–99) (quotation omitted). Because plaintiffs provide a statement of their claim and the grounds upon which it rests, the Consolidated Complaint may not be dismissed as to BRC or Bosch Rexroth AG at this stage of the proceeding.

## III. PERSONAL JURISDICTION OVER NON–RESIDENT DEFENDANT

Bosch Rexroth AG moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that it lacks the requisite contacts with Pennsylvania to satisfy that state's long-arm statute conferring general jurisdiction.[5]

Waldow Decl. ¶¶ 2–3; 12/12/01 Affidavit of Andricopulos, Ex. A to 5/17 Waldow Decl., ¶¶ 3–4. Similarly, Bosch Rexroth AG's Head of Marketing Sales and Application Center Department, Guenter Fanta, testifies that the hydraulics system of the Train was never designed, constructed, manufactured, modified, installed or tested by Bosch Rexroth AG. *See* 5/17/02 Affidavit of Guenter Fanta, Ex. 3 to Bosch Rexroth AG's Notice of Motion, ¶ 5.

Yet, it is beyond cavil that the Court must accept plaintiffs' allegations as true on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Excerpts of reports by Austrian investigators attached to the Consolidated Complaint reveal that plaintiffs had a good faith basis for naming Bosch Rexroth AG as a defendant. *See* Excerpts from 9/3/01 Report by Edwin Engel (concluding that the Train's hydraulics system was defective), Ex. 9 to Consol. Compl.; Excerpts from 7/16/01

Report by Klaus Hellmich (same), Ex. 10 to Consol. Compl. While neither expert identifies Bosch Rexroth AG or BRC as a responsible party, a report from the prosecutor in Salzburg, Austria concludes that technicians from "Mannesmann Rexroth" were responsible for "laying and installing the hydraulic measuring pipes made of plastic material ...." Undated Report, Salzburg Prosecutor's Office, Republic of Austria, Ex. G–7 to Pl. Opp., at 2. Mannesmann Rexroth AG is the predecessor corporation to Bosch Rexroth AG. *See supra* note 1. Given the alleged interrelatedness of Bosch Rexroth AG and other "Bosch Group" companies, *see* Pl. Opp. at 21–23 (citing website exhibits and corporate organization chart), there is also some basis for including BRC in this suit.

5. BRC, a Pennsylvania resident, does not challenge personal jurisdiction.

## A. Legal Standard

■ A district court sitting in diversity applies the law of the forum state. *See On Air Ent'mt Corp. v. Nat'l Indemnity Co.,* 210 F.3d 146, 149 (3d Cir.2000). The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied. *See In re MTBE Litig.,* 175 F.Supp.2d 593, 606 n. 20 (S.D.N.Y. 2001) ("When considering questions of state law the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Thus, this Court looks to Pennsylvania law to determine whether personal jurisdiction is proper. *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,* 75 F.3d 147, 150 (3d Cir.1996) (noting that district court sitting in diversity applies law of forum state to determine whether personal jurisdiction is proper).

In order for a Pennsylvania court to exercise jurisdiction over a non-resident defendant, plaintiffs must show that (1) Pennsylvania's long-arm statute, 42 Pennsylvania Statutes and Consolidated Statutes ("Pa.C.S.") § 5301 *et seq.* (Purdon's 2002), authorizes jurisdiction; and (2) the exercise of jurisdiction satisfies constitutional principles of due process. *See Graham v. Mach. Dist., Inc.,* 410 Pa.Super. 267, 269–70, 599 A.2d 984 (1991); *Temtex Prods., Inc. v. Kramer,* 330 Pa.Super. 183, 194, 479 A.2d 500 (1984).

The Pennsylvania long-arm statute authorizes jurisdiction under two theories. If the plaintiffs' cause of action arises out of the defendants' forum-related activities or contacts, defendants may be subject to "specific jurisdiction" pursuant to 42 Pa. C.S. § 5322. *See, e.g., Allied Leather Corp. v. Altama Delta Corp.,* 785 F.Supp. 494, 497 (M.D.Pa.1992). Specific jurisdiction has a narrow scope and is focused on the particular acts of the defendant that gave rise to the underlying cause of action. *See Am. Bus. Fin. Servs., Inc. v. First Union Nat'l Bank,* No. 01 Civ. 4955, 2002 WL 433735, at *5 (Pa.Com.Pl. Mar.5, 2002). "General jurisdiction," in contrast, exists where a non-resident defendant has engaged in continuous and systematic activities within the forum, permitting a court to exercise jurisdiction over the non-resident defendant for non-forum-related disputes. *See* 42 Pa.C.S. § 5301; *Pennzoil Prods. Co. v. Colelli & Assocs.,* 149 F.3d 197, 200–01 (3d Cir.1998); *Allied Leather,* 785 F.Supp. at 497.

■ To determine whether the exercise of personal jurisdiction satisfies principles of due process, Pennsylvania applies a two-prong test. *See Vetrotex,* 75 F.3d at 150–51; *Cinalli v. Kane,* 191 F.Supp.2d 601, 610 (E.D.Pa.2002). *First,* the Court must determine whether the defendant purposefully established minimum contacts with the forum. *See Vetrotex,* 75 F.3d at 150 (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "*Second,* if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'" *Id.* at 150–51 (emphasis added) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "In determining whether this requirement has been met, a court should consider the following: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and (5) the shared interest of several states in furthering fundamental substantive social policies." *Am. Bus. Fin. Servs.,* 2002 WL

433735, at \*5–\*6 (citing *Kubik v. Letteri,* 532 Pa. 10, 14, 614 A.2d 1110 (1992)).

■ Once a defendant raises a personal jurisdiction defense, the burden of establishing the court's jurisdiction rests with plaintiff. *See Cinalli,* 191 F.Supp.2d at 610. "Prior to trial, however, [ ] plaintiff[s] need only make a prima facie showing of jurisdiction." *Id.* (citing *Mellon Bank v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992)). A plaintiff is generally entitled to a "fair opportunity" to conduct jurisdictional discovery. *Fed. Ins. Co. v. Richard I. Rubin & Co.,* 12 F.3d 1270, 1283–85 & n. 11 (3d Cir.1993) (granting discovery on the issue of sovereign immunity) (quotation omitted). *See also Rose v. Cont'l AG,* No. 99 Civ. 3794, 2001 WL 236738, at \*4 (E.D.Pa. Mar.2, 2001) (holding that plaintiffs who had been served, and received responses to, interrogatories on personal jurisdiction, had had such a fair opportunity).

■ Such discovery must, however, be "limited to the essentials necessary to determining the preliminary question of jurisdiction." *Fed. Ins. Co.,* 12 F.3d at 1285 n. 11. Plaintiffs may not conduct a fishing expedition, *see Arch v. Am. Tobacco Co.,* 984 F.Supp. 830, 841 (E.D.Pa.1997), but must "target[ ] information pertinent to the well established factors involved in a jurisdictional inquiry," *Rose,* 2001 WL 236738, at \*4.

### B. Analysis

Plaintiffs argue that Bosch Rexroth AG's contacts with the forum state confer general jurisdiction on the courts of Pennsylvania. In the alternative, plaintiffs argue that Bosch Rexroth AG is subject to general jurisdiction in Pennsylvania by virtue of the presence of BRC.

### 1. Direct Contacts

Bosch Rexroth AG has no offices in Pennsylvania or the United States, neither owns nor leases any real estate in Pennsylvania or the United States, employs no people here, conducts no advertising or marketing here, has no mailing address or telephone listing here, has no bank account here and holds no meetings here. *See* 5/17/02 Affidavit of Ingo Neuer, Head of the Legal Department at Bosch Rexroth AG, Ex. 2 to Bosch Rexroth AG's Notice of Motion, ¶¶ 1, 4–12.

Plaintiffs suggest that Bosch Rexroth AG's interactive website is nevertheless sufficient to confer general jurisdiction over it. It is, obviously, accessible to users in Pennsylvania. Plaintiffs also allege that Bosch Rexroth AG "sells [its] products to Pennsylvania on a regular basis" through the website. Pl. Opp. at 24.[6] In further support of their argument, plaintiffs cite various cases that purportedly show that courts "consider[ ] defendants' use of internet engagement with a forum as a proxy for actual physical presence." Pl. Opp. at 15 (citing, *inter alia, Remick v. Manfredy,* 52 F.Supp.2d 452, 457 (E.D.Pa.1999), and *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1127 (W.D.Pa.1997)). To the contrary, each of these cases and the others cited in this section of plaintiffs' brief apply Pennsylvania's long-arm statute (and that of other states) conferring *specific* jurisdiction, *i.e.,* jurisdiction over a dispute about an Internet sale or transaction in the forum. Plaintiffs fail to cite a single decision where a Pennsylvania federal or state court concluded that even highly interactive Internet activity was sufficient to confer *general* jurisdiction over a nonresident.

---

**6.** While it is somewhat troubling that plaintiffs cite no authority for this assertion in their *motion papers,* I assume this is the result of oversight rather than bad faith. Plaintiffs do claim that defendant "acknowledges" as much in its motion to this Court, Pl. Opp. at 24, but fail to provide a citation for that assertion as well.

## 2. Indirect Contacts

Under some circumstances, the contacts of a resident subsidiary may be imputed to a nonresident defendant for purposes of establishing personal jurisdiction. Such contacts will only be attributed to the non-resident corporation where the subsidiary is (1) its alter ego, (2) a mere department of it, or (3) its agent. *See Brooks v. Bacardi Rum Corp.*, 943 F.Supp. 559, 562–63 (E.D.Pa.1996) (reciting the three tests under which a subsidiary's contacts can be imputed to the parent); *see also Arch*, 984 F.Supp. at 837 (suggesting comprehensive approach whereby "all relevant factors" contained in the three tests are considered at once).

Jurisdiction based on agency is proper where "the subsidiary is necessarily performing activities that the parent would otherwise have to perform in the absence of the subsidiary[.]" *In re Latex Gloves Prods. Liab. Litig.*, MDL No. 1148, 2001 WL 964105, at *3 n. 10 (E.D.Pa. Aug.22, 2001) (quoting *Arch*, 984 F.Supp. at 837). *See also Gallagher v. Mazda Motor of Am.*, 781 F.Supp. 1079, 1084–86 (E.D.Pa. 1992) (holding that a subsidiary's contacts can be imputed for purposes of service of process where "a parent uses [the] subsidiary to do what it otherwise would have done itself . . . ."). This is in contrast to a nonresident holding company—in such a case, "the subsidiary is not performing a function that the parent would otherwise have had to perform itself (the holding company could simply hold another type of subsidiary)." *Arch*, 984 F.Supp. at 837 (citing *Savin Corp. v. Heritage Copy Prods., Inc.*, 661 F.Supp. 463, 471 (M.D.Pa. 1987), and *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227, 237 (D.Del.1984)).

Where a parent's control over its subsidiary is so complete that it is a "mere department" of the parent, the subsidiary's presence in Pennsylvania will give rise to jurisdiction over the nonresident parent. *See Schulman v. Walt Disney World Co.*, No. 91 Civ. 5259, 1992 WL 38390, at *3 (E.D.Pa. Feb.25, 1992) (citations omitted). " 'The degree of control exercised by the parent must be greater than normally associated with common ownership and directorship.' " *Arch*, 984 F.Supp. at 837–38 (quoting *Savin*, 661 F.Supp. at 469). Specifically, "[a]ppropriate parental involvement includes: monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." *Latex Gloves*, 2001 WL 964105, at *3 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001)) (quotation marks, citations omitted). Such involvement by the parent does not render the subsidiary a mere department of it. For the subsidiary to be a mere department, plaintiffs must prove that the parent controls the *day-to-day* operations of the subsidiary. *See Arch*, 984 F.Supp. at 838 n. 10.

 Here, plaintiffs appear to argue that BRC is both an agent as well as a mere department of Bosch Rexroth AG. They assert that Bosch Rexroth AG sells its products to BRC for distribution to customers in Pennsylvania. *See* Pl. Opp. at 24. They also contend that there is significant overlap in the management and Boards of Directors of the two companies, that the two corporations share a logo, have almost identical websites, and have the same name. *See id.* at 23–24.

Defendants argue, in turn, that the various tests for imputing contacts cannot and do not apply because both companies are wholly-owned subsidiaries of Robert Bosch GmbH, the parent holding company, and are therefore independent sister corporations. It is in fact unclear whether plaintiffs even allege that Bosch Rexroth AG is the parent of BRC. They allege in their

Complaint that BRC is an "instrumentality" of Bosch Rexroth AG, Consol. Compl. ¶ 18, and also appear to contend in their motion papers that BRC is a subsidiary of Bosch Rexroth AG.[7] *See* Pl. Opp. at 24 (asserting that Bosch Rexroth AG's use of BRC as a distributor "flatly contradicts defendant's contention that it does [not] utilize the United States *subsidiaries* ") (emphasis added). In any event, plaintiffs have failed to show that Bosch Rexroth AG asserts day-to-day control over the activities of BRC. Nor have plaintiffs shown that, were it not for the presence of BRC, Bosch Rexroth AG would be conducting its own activities in Pennsylvania. Rather, it appears from the evidence presented that Bosch Rexroth AG would simply hire another distributor for its products.

▪ Plaintiffs argue, finally, that "Bosch [Rexroth] AG's targeted sales to this jurisdiction through its interactive website and its [purported] agency relationship with Bosch [Rexroth] Corporation" at least provide this Court with a basis on which to allow for limited jurisdictional discovery under Pennsylvania law. I agree. "Where [plaintiffs'] claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid [plaintiffs] in discharging [the burden of proving personal jurisdiction]." *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A.*, 723 F.2d 357, 362 (3d Cir.1983) (citation omitted) (applying Pennsylvania law). In particular, "further inquiry and discovery is warranted in assessing a claim of lack of personal juris-

diction [over foreign corporations where the evidence] suggests the existence of a significant interrelationship between the parties . . . ." *Frank Sexton Enter., Inc. v. Societe De Diffusion Int'l Agro–Alimentaire*, No. 97 Civ. 7104, 1998 WL 632022, at *2 (E.D.Pa. Aug.28, 1998) (citations omitted). Thus, the motion is denied at this stage. Plaintiffs are entitled to jurisdictional discovery of Bosch Rexroth AG.[8]

## IV. FORUM NON CONVENIENS

### A. Legal Standard

▪ In considering a motion to dismiss on forum non conveniens grounds, " 'the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.' " *Massaquoi v. Virgin Atlantic Airways*, 945 F.Supp. 58, 60 (S.D.N.Y.1996) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). The Supreme Court established the modern doctrine of forum non conveniens in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). To succeed on such a motion, defendants must satisfy a two-prong test: it must show that (1) an adequate alternate forum exists; and (2) private and public interest factors weigh in favor of dismissal. *See id.* at 508–09, 67 S.Ct. 839; *Peregrine Myanmar, Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir.1996). Defendants must demonstrate that these public and private interest factors "weigh so heavily in favor of the foreign forum that they overcome the presumption for plain-

---

7. They cite no authority imputing the jurisdictional contacts of a non-subsidiary or sister corporation to a foreign entity, and therefore appear to concede that this Court may exercise jurisdiction over Bosch Rexroth AG only if BRC is its subsidiary.

8. Defendant Bosch Rexroth AG also argues that this Court should dismiss the action against it for lack of sufficient service of pro-

cess. Service of process on an agent or mere department of a foreign parent constitutes effective service. *See Gallagher*, 781 F.Supp. at 1083 ("[W]hen the jurisdictional contacts of a subsidiary corporation are imputed to the parent corporation, service of process on the subsidiary is effective against the parent."); *Akzona*, 607 F.Supp. at 236–37. Jurisdictional discovery will also resolve this issue.

tiff[s'] choice of forum," which will "rarely be disturbed." *Dorfman v. Marriott Int'l Hotels,* No. 99 Civ. 10496, 2001 WL 69423, at *7 (S.D.N.Y. Jan.29, 2001) (citation omitted). This presumption "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

**B. Analysis**

 The defendants' motion to dismiss in favor of trial in Austria is denied for the reasons set forth in *In re Ski Train Fire in Kaprun, Austria on November 11, 2000* ("*Kaprun I*"), 230 F.Supp.2d 376, 386–91 (S.D.N.Y.2002). Defendants also suggest that this action be dismissed in favor of trial in Germany. *See* BR AG Mem. at 13; BRC Mem. at 21. Bosch Rexroth AG's headquarters are in Germany, and the evidence related to its involvement in the manufacture of the ski train is in Germany. In addition, BRC has consented to service in Germany. *See* BRC Mem. at 21. However, given that (1) the named plaintiffs reside in New York, Florida, Pennsylvania, and California; (2) Austria was the location of the accident; (3) the vast majority of the evidence is located in either Austria or New York; and (4) the severe inconvenience to the named plaintiffs if required to litigate abroad, this suggestion is unavailing. The motion is denied.

**V. CONCLUSION**

For the reasons stated above, BRC's motion to dismiss is denied in its entirety. Bosch Rexroth AG's motion to dismiss must also be denied at this stage, but may be renewed at a later date with respect to jurisdiction once discovery on the jurisdictional issue has been completed.

SO ORDERED.